CLINTON and others, Respondents, vs. WEBSTER, Appellant.
SAME, Appellants, vs. SAME, Respondent.

*April 15 — May 15, 1886.*

ACCOUNTING.   *(1) Findings of fact: Evidence.   (2) Costs.*

1. Findings of the trial court in an action for an accounting, *held* to be sustained by the evidence.
2. Where, before suit, the plaintiffs demanded an accounting, which was refused and all liability denied, and on the trial the plaintiffs recovered a considerable amount, *held* that they should also recover full costs.

APPEALS from the Circuit Court for *Winnebago* County.

Action for an accounting, brought against *A. J. Webster*, as surviving partner of the firm of Webster & Lawson. The facts are sufficiently stated in the opinion.

For the plaintiffs there were briefs by *Finch & Barber*, and oral argument by *Mr. Barber*.

For the defendant there were briefs by *Gary, Phillips & Forward*, and oral argument by *Mr. Gary*.

ORTON, J.   There are two cases, both parties having appealed from the judgment on the same facts.   This is a very complicated case, with a wonderful confusion and contradiction of testimony.   It is essentially a case of facts, and very few, if any, questions of law are in it.   The transactions between the parties, from beginning to the end, were conducted on both sides with almost criminal negli-

gence, and in the most slattern and slovenly manner. There was no reliable system of book-keeping ever adopted, and the entries made here and there, on divers scattered books, were many of them erroneous, and there is a dearth of written *memoranda* in respect to many of the most important matters. The plaintiffs gave two mortgages, one to the defendants and the other to one Hay, on about 3,000,000 feet of logs and lumber, and some other property. The defendants obtained the Hay mortgage, and in October, 1879, the parties made a written contract that the defendants should have the privilege to manufacture into lumber all the logs and timber described in said mortgages, and apply the proceeds upon the same after paying expenses, etc. The defendants thereupon took possession of all the logs and timber, and nearly all of the other mortgaged property. The property mainly consisted of manufactured lumber in the mill-yard, and logs afloat and sunk in the pond and about the mill. There had never been any counting or inventory or identification of the same, and it was uncertain what amount thereof that was mortgaged was so turned over to the defendants, and this was one of the questions of dispute; the defendants claiming that the plaintiffs had manufactured and sold a large quantity thereof, and the plaintiffs denying the same. The mill property then belonged to *Uriah P. Clinton*, one of said plaintiffs, and one Stacy, in certain proportions, and the defendants contracted with said Stacy to saw up said logs at that mill. It was found by the referee that said *Clinton* was a secret partner of said Stacy in said contract. The other chattels covered by the mortgages remained in and about the mill in use by said Stacy in said sawing contract, and none of it has ever been returned to the said plaintiffs. When said lumber was sawed it was shipped or sold according to the directions of the defendants, and accounts were rendered

by said Stacy to the defendants from time to time of said sawing.

In January, 1885, the said *Clinton* sold his share of said mill property to Stacy for and on account of P. V. Lawson, Sr., one of the company, and said Lawson became part owner thereof, and said Lawson and Stacy thereafter became partners in said sawing. In October, 1881, said Lawson died, and P. V. Lawson, Jr., his son, became one of his administrators, and had considerable to do about said contract, and the sawing of said lumber. Lawson, Sr., had managed the business almost solely for the defendants, and knew more about the affairs than the said *Webster*. In December, 1882, the said *Clinton*, who then owned the entire interest in the residue of said property after paying off said mortgages and expenses, requested the said *Webster* to render an account of all these matters, which he failed to do until after the commencement of this suit, but claimed that the defendants were not indebted to the plaintiffs in any sum whatever. It can be seen how these many changes in the persons interested, and the death of Lawson, must have complicated said affairs. One important question of dispute was the amount or quantity of said logs; and whether nearly 800,000 feet of sunken logs were ever used by the defendants was another question; and how many of said logs the said *Clinton* availed himself of was another. There was very little certain evidence of any amount sawed, except by the accounts of said Stacy. The evidence was so confused and contradictory that it was impossible to ascertain what quantity of logs had ever come to the possession of said defendants, or was ever used by them, or sold or disposed of for their benefit, or what part, if any, was used or sold by the plaintiffs, or by said *Clinton*, with much certainty; and many amounts, quantities, and values had to be approximated by very uncertain evidence, or

from circumstances and probabilities. And so it was as to what became of the other chattel property.

It is almost impossible to make a fuller statement of facts, so great are the uncertainties and contradictions of the evidence. This cause ought to have been referred to arbitrators, whose award should have been final. It was referred to a referee, to hear, try, and determine, who, after hearing all the testimony, stated an account between the parties; and on the disputed facts made *one hundred and seven* findings; and, as a general conclusion of law, found due the plaintiffs from the defendants the sum of $11,215.25. To these findings the defendants filed seventy-eight exceptions. One of these findings excepted to was clearly immaterial and irrelevant, viz., that Lawson and *Webster*, in April, 1881, dissolved their copartnership, and thereafter Lawson took all the interests growing out of the mortgages and contracts, and *Webster* took all the other property and assumed all the liabilities of the late firm. This could not affect the rights of these plaintiffs in any respect, and this finding is *reversed*. On the hearing before the court twenty-six of these findings of fact were essentially modified, and five or six vacated, and there was a general finding for plaintiffs of $4,195.27 against the defendants. These amounts include interest on the various items found. Judgment for this amount was rendered, and for $873.75, only one half of the costs.

We listened to very long and very able arguments of very able counsel on both sides, and we have since read the evidence, and carefully compared the grounds of difference between the referee and the court, and we are satisfied that the findings of the court were warranted, and based upon the more satisfactory evidence. There is no such preponderance of the evidence against the findings of the court as would justify this court in disturbing them. Any extended examination and consideration of the evidence in this opinion

would be of no use to any one, except as a warning to others not to allow such important transactions to so long remain under clouds of such obscurity and doubt, and to conduct such business in a more considerate and satisfactory manner, and to make frequent settlements. An opinion swollen to the enormous volume necessary to a full consideration of this mass of conflicting evidence would only incumber the reports. The circuit court found that the plaintiffs were entitled to an accounting from the defendants as trustees of the plaintiffs in possession of the property, and the evidence shows that the plaintiffs demanded such accounting before suit, which was refused, and all liability denied by the defendants. The plaintiffs recovered a considerable amount, which shows that they had a right to sue. According to the usual rule in such cases, the plaintiffs would be entitled to full costs. *Benson v. Cutler, ante,* p. 305.

*By the Court.*— The judgment of the circuit court on the merits for the sum of $4,195.27, appealed from by both parties, is affirmed, but without costs to either party, and the plaintiffs, as appellants, shall pay the costs of the clerk of this court. That part of the judgment which allows the plaintiffs only half of the costs is reversed, and the cause remanded with direction to insert in the judgment full costs for the plaintiffs.